UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| JOSE GOMEZ, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 7:18-CV-342 |
| | § | |
| CITY OF PHARR, *et al*, | § | |
| | § | |
| Defendants. | § | |

## <u>ORDER AND OPINION</u>

The Court now considers the motion to dismiss[1] brought by the City of Pharr, more particularly the City of Pharr Police Department ("PPD"); Officer Raul Flores ("Flores"); and Officer Michael Rodriguez ("Rodriguez") (collectively "Defendants"); as well as the response filed by Jose Gomez, as representative of the estate of Martin Gomez ("Plaintiff").[2] Also before the Court is Plaintiff's motion for leave to amend his complaint[3] and Defendants' response.[4]

After duly considering the record and relevant authorities, the Court **GRANTS** Defendants' dismissal motion as follows.

### I.    BACKGROUND

The Court finds it helpful to quote directly from the "Facts" section in Plaintiff's complaint because it paints a clear picture of Plaintiff's allegations:

> On or about December 20, 2016 approximately at 4:30 am, City of Pharr police officers were called to the scene of a house at 221 E. Emil Street in Pharr, Texas. Jose Gomez had called the police department to report that his mentally unstable brother, Martin Gomez, was acting strange and unstable. Jose Gomez had called

---

[1] Dkt. No. 8. The Court notes that the motion fails to comply with Rules 7 and 10 of the Federal Rules of Civil Procedure, which requires numbered paragraphs. Defendants are cautioned to be mindful of the requirements of the Federal Rules of Civil Procedure.
[2] Dkt. No. 12.
[3] Dkt. No. 13.
[4] Dkt. No. 16.

the Pharr PD several times before and officers had arrived and helped to calm down Martin Gomez or taken him to the behavioral unit. This time things would be different as Jose Gomez would soon find out.

Jose Gomez reported to the dispatcher that his brother, Martin Gomez had acted like this before. The Pharr police department had notice that Martin Gomez suffered from mental instability, aggression, and had previously needed to go to a hospital behavioral unit. Jose Gomez also reported that Martin Gomez had just taken his medication but was still rowdy. Two Pharr police officers arrived at the scene, Raul Flores and Michael Rodriguez. Martin Gomez, noticing the flashing lights outside, nervously walked up to the window to see what was going on. He had been eating ice cream with two butter knives. Jose Gomez came out of the house, walked out to the front walkway and spoke to the two police officers. They directed him to stay back while they approached the house.

They opened the front door, noticed that Martin Gomez had knives in his hand, and panicked. They started running backwards down the front porch and started to pull their guns from their holsters. Martin Gomez, still startled by the flashing lights and the police officers, came outside the house. He was still holding the butter knives in his hands that had only minutes before been used to dig into an ice cream bowl. Martin, upon seeing a familiar face, his brother, Jose, walked towards him slowly (Martin was a special needs individual who couldn't walk or run very fast). The police officers, now completely and utterly spooked by the special needs man ambling down the sidewalk and not responding to their commands, began shooting a barrage of bullets at Martin Gomez. Officer Flores ran in one direction away from Martin and Officer Rodriguez ran in the opposite direction. Jose, upon seeing that Martin had been shot multiple times, yelled at the police officers to stop and then hovered over the bullet-riddled body of his brother. The shots finally stopped, but many had pierced Martin Gomez and fatally wounded him.[5]

Plaintiff filed a complaint in this Court[6] and then amended as a matter of course.[7] Plaintiff alleges pursuant to 42 U.S.C. §1983 constitutional excessive force violations against Flores and Rodriguez ("Officers") in their individual and official capacities[8] and against PPD for failure to properly train and supervise its employees.[9] Plaintiff also alleges "bystander injury" and asserts Jose Gomez "suffered direct personal injury in the form of mental anguish and severe

---

[5] Dkt. No. 4 pp. 3–4, ¶ 9.
[6] Dkt. No. 1.
[7] Dkt. No. 4.
[8] *Id.* at p. 5, ¶¶ 12–15.
[9] *Id.*

emotional distress."[10] Finally, Plaintiff asserts that "Defendants were jointly and severally liable for the gross negligence, which was the proximate cause of Plaintiff's injuries."[11] Plaintiff seeks damages, including punitive and exemplary damages, and any other relief to which he may be entitled.[12]

Defendants filed the instant motion to dismiss,[13] Plaintiff timely responded,[14] and Defendants replied.[15]

Plaintiff also filed a motion for leave to amend his complaint[16] and Defendants responded.[17] The Court now turns to its analysis.

## II. LEGAL STANDARD

To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."[18] This does not require detailed factual allegations, but it does require "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."[19] Courts first disregard from their analysis any conclusory allegations as not entitled to the assumption of truth,[20] but regard well-pled facts as true, viewing them in the light most favorable to the plaintiff.[21] Courts then undertake the "context-specific" task of determining whether the remaining well-pled allegations give rise to an entitlement to relief that is plausible, rather than merely possible or conceivable.[22]

---

[10] *Id.* at p. 7, ¶¶ 20–21.
[11] *Id.* at p. 9, ¶ 32.
[12] *Id.* at pp. 8–10.
[13] Dkt. No. 8.
[14] Dkt. No. 12.
[15] Dkt. No. 15.
[16] Dkt. No. 13.
[17] Dkt. No. 16.
[18] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007), *cert. denied*, 552 U.S. 1182 (2008) (internal quotations omitted).
[19] *Twombly*, 550 U.S. at 555.
[20] *See id.* at 678–79.
[21] *Id.*
[22] *See id*. at 679–80.

### III.  ANALYSIS

#### a.  Leave to Amend

Because granting leave to amend could moot Defendants' motion to dismiss, the Court will first consider whether leave should be granted. Plaintiff does not attach a proposed amended complaint or state any grounds upon which leave to amend should be granted.[23] However, in his response to Defendants' motion to dismiss, Plaintiff states he will, "request to replead and take out any references to exemplary damages against the city in the prayer section of the complaint."[24] Although it is unclear if Plaintiff's response is intended to be read in conjunction with his motion for leave to amend the complaint, the Court will assume this is Plaintiff's intent because Plaintiff provides no grounds for amendment in his motion for leave to amend.

While Rule 15(a)(2) provides that the Court should freely give leave to amend when justice so requires, such leave is not required where "the movant 'contend[s] that his pleadings sufficed to state [a] claim' throughout his briefing . . . and 'fail[s] to apprise the district court of the facts that he would plead in an amended complaint, if necessary, to cure any deficiencies.'"[25]

Here, Plaintiff has continually supported his pleading throughout this case, filed a response to the dismissal motion, and filed no alternate pleading. Plaintiff's motion to amend contains no grounds for amendment and does not provide any information regarding the factual changes Plaintiff would seek to make. In addition, even assuming Plaintiff intended his response to the motion to dismiss to be read with his motion for leave to amend, Plaintiff's barebones mention of removing reference to exemplary damages fails to apprise this Court of the facts he

---

[23] *See* Dkt. No. 13.
[24] Dkt. No. 12 p. 5, ¶ 7.
[25] *Edionwe v. Bailey*, 860 F.3d 287, 294 (5th Cir. 2017) (quoting *Gentilello v. Rege*, 627 F.3d 540, 546 (5th Cir. 2010)).

seeks to plead in an amended complaint that would cure any deficiencies in his complaint. Accordingly, the Court finds that leave to amend should be **DENIED**.

### b. Motion to Dismiss

Defendants argue (1) Plaintiff's official capacity claims against Officers Flores and Rodriguez must be dismissed as they are duplicative of claims against the PPD; (2) Plaintiff has not stated a claim against Flores and Rodriguez in their individual capacities, and, alternatively, if Plaintiff does state a claim the officers are protected by qualified immunity; (3) Plaintiff has failed to allege a pattern, practice, policy, or custom as necessary to allege a claim against the PPD; and (4) Plaintiff has failed to state a claim under state law under Texas Occupations Code § 1701.253.

Plaintiff responds that Flores and Rodriguez's actions were not objectively reasonable. Plaintiff also argues the PPD did not properly train its officers, and that the reference to Texas Occupations Code § 1701.253 was not an attempt to bring a state law claim, but rather to identify training protocols and policies violated by the PPD. The Court now considers each of these arguments and whether dismissal is merited.

### i. Official Capacity Claims Against Flores and Rodriguez

A suit against a municipal employee in his official capacity is no different from a suit against the municipality itself.[26] The Fifth Circuit has held it appropriate to dismiss claims against officers in their official capacities when the "allegations duplicate claims against the respective governmental entities themselves."[27]

---

[26] *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).
[27] *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001).

Here, Plaintiff brings claims of violations of excessive force against Flores and Rodriguez in their official and individual capacities and against the PPD.[28] Because Plaintiff's claims against Flores and Rodriguez in their official capacity duplicate the claims against the PPD, the official capacity claims against Flores and Rodriguez are **DISMISSED WITH PREJUDICE**.

*ii. Excessive Force Claims Against Flores and Rodriguez*

Defendants argue that Plaintiff's excessive force claims against Flores and Rodriguez fail because Plaintiff "makes no allegations as to how the officers should have acted or how a reasonable officer would have acted."[29] Defendants further contend even if Plaintiff had properly alleged sufficient facts to support an excessive force claim, Flores and Rodriguez are entitled to qualified immunity. Plaintiff responds that Flores and Rodriguez behaved unreasonably and recklessly and they could have "used their tasers or simply run away."[30] Plaintiff additionally responds that Flores and Rodriguez are not entitled to qualified immunity because their actions were not objectively reasonable.

Section 1983 of 42 U.S.C. provides a private right of action for the deprivation of rights, privileges, and immunities secured by the Constitution or laws of the United States by individuals acting under the color of state law.[31] "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred."[32]

---

[28] *See* Dkt. No. 1.
[29] Dkt. No. 8 p. 3.
[30] Dkt. No. 12 p. 2, ¶ 3.
[31] 42 U.S.C.A. § 1983. "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."
[32] *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citations omitted).

"Claims that law enforcement officials have used excessive force in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen . . . must be judged by reference to the Fourth Amendment's 'reasonableness' standard."[33] A Fourth Amendment excessive force claim has the following elements: "(1) an injury that (2) resulted directly and only from the use of force that was excessive to the need, and (3) the use of force was objectively unreasonable."[34] The second and third elements are extremely fact-specific inquiries. Whether the use of force was reasonable or excessive depends upon the totality of the circumstances, including: the severity of the crime, amount of force used contrasted with the amount of force needed, whether the suspect posed a safety risk to police or the public, and whether the suspect was actively resisting arrest or evading arrest by flight.[35]

Potentially deadly force is objectively reasonable where the officer "has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others."[36] "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."[37]

Approaching, attacking, or threatening police officers with a knife or knives can be the basis for an objectively reasonable determination that a suspect poses a threat of serious physical harm. The Supreme Court, in *City of San Francisco v. Sheehan*, found that "potentially deadly force was justified" against a woman armed with a knife who threatened officers and, despite warnings, and then pepper spray, and "kept coming at the officers until she was only a few feet from a cornered [o]fficer."[38] In *Rockwell v. Brown*, the Fifth Circuit concluded that the fatal

[33] *Graham v. Connor*, 490 U.S. 386, 395 (1989).
[34] *Mathews v. Davidson,* 674 F. App'x 394,395 (5th Cir. 2017), as revised (Jan. 9, 2017) (quoting *Bush v. Strain*, 513 F.3d 492, 501 (5th Cir. 2008)).
[35] *Bone v. Dunnaway,* 657 F. App'x 258 (5th Cir. 2016).
[36] *Tennessee v. Garner*, 471 U.S. 1, 11 (1985).
[37] *Graham v. Connor*, 490 U.S. 386, 396 (1989).
[38] 135 S. Ct. 1765, 1770, 1775 (2015) (quotation omitted).

shooting of a mentally-ill man armed with two knives who attacked officers was objectively reasonable.[39] In a similar case, *Elizondo v. Green*, the Fifth Circuit found that deadly was force was reasonable when a distraught and mentally-ill teen "was hostile, armed with a knife, in close proximity to [the officer], and moving closer."[40] In contrast, the Fifth Circuit has found that an officer that shot an *unarmed*, mentally-ill man who was acting erratically had fair notice that such behavior was objectively unreasonable.[41]

Courts rely on a number of factors in determining whether an officer could reasonably conclude that an individual posed a serious threat of harm such that the use of deadly force was objectively reasonable. These include whether the suspect was armed and moving towards officers,[42] and whether the suspect ignored repeated officer demands.[43] This Court could find no cases specifically addressing butter knives, however, many courts have found officers were justified in utilizing deadly force when they reasonably believed an object could have been a

---

[39] 664 F.3d 985, 992 (5th Cir. 2011).

[40] 671 F.3d 506, 510 (5th Cir. 2012).

[41] *Hobart v. Estrada,* 582 F. App'x 348, 355 (5th Cir. 2014*)* (denying qualified immunity to officer who shot unarmed, mentally ill nineteen-year-old who was advancing on officer, flailing his arms, and had hit the officer); *see also Khansari v. City of Houston,* 14 F. Supp. 3d 842, 859 (5th Cir. 2014) (finding that officers who tasered an unarmed teen suffering from severe anxiety were not entitled to qualified immunity).

[42] *See, e.g., Rice v. ReliaStar Life Ins. Co.*, 770 F.3d 1122, 1134–1135 (5th Cir. 2014) (finding no constitutional violation where police warned and then shot a suicidal man who "was undisputedly approaching the officers with a loaded weapon . . . which he refused to surrender"); *Elizondo*, 671 F.3d at 510-11 (finding it was not clearly unreasonable to shoot a person who "was hostile, armed with a knife, in close proximity to [the officer], and moving closer"); *see also Sheehan*, 135 S. Ct. 1765, at 1775 (2015) (noting that a woman armed with a knife "kept coming at the officers until she was only a few feet from a cornered [officer]. At this point, the use of potentially deadly force was justified.") (quotation omitted); *Rhodes v. McDannel*, 945 F.2d 117, 120 (6th Cir. 1991), cert. denied, 502 U.S. 1032 (1992) (finding deadly force to be appropriate when an individual holding a knife advanced to within four to six feet of the officers); *Wood v. City of Lakeland*, 203 F.3d 1288, 1292-93 (11th Cir. 2000) (deadly force was deemed reasonable against a suicidal suspect armed with a box cutter who slid to within six to eight feet of the officers).

[43] *See, e.g., Clayton v. Columbia Cas. Co.*, 547 F. App'x 645, 653 (5th Cir. 2013) (qualified immunity appropriate where "suspect with dangerous and violent propensities" "continued toward the Deputy, ignoring his commands"); *Manis v. Lawson*, 585 F.3d 839, 844 (5th Cir. 2009) (finding no constitutional violation where victim ignored repeated police commands, "reached under the seat of his vehicle and then moved as if he had obtained the object he sought"); *Ramirez v. Knoulton*, 542 F.3d 124, 131 (5th Cir. 2008) ("The totality of Ramirez's conduct could reasonably be interpreted as defiant and threatening. He repeatedly refused the officers' commands and ultimately stood, armed, several yards from the officers. Ramirez brought his hands together in what we believe could reasonably be interpreted as a threatening gesture, as if to grip the handgun with both hands in preparation to aim it at the officers.").

deadly weapon, even if the object, in fact, did not pose a risk of harm.[44] Additionally many courts have considered the size of knives held by suspects and whether an officer could reasonably conclude the knife posed a threat of harm on that basis.[45]

The Court concludes that Plaintiff fails to state a claim against Defendants Flores and Rodriguez. Specifically, the Court finds Plaintiff fails to allege sufficient facts to find the force used was excessive to the need and that actions of Officer Flores and Rodriguez were objectively unreasonable.

Plaintiff's allegations satisfy the first prong: an injury caused by Flores and Rodriguez. Plaintiff alleges that Flores and Rodriguez both fired a "barrage of bullets" at Martin Gomez ("Decedent"), which resulted in his death.[46] Although, Plaintiff does not say which bullet may have struck Decedent, Plaintiff alleges both fired a "barrage" at Decedent. This allegation is sufficient to find that an injury was caused by Flores and Rodriguez and clearly satisfies the first prong of an excessive force claim.

However, the Court finds that Plaintiff's allegations fail to sufficiently state that the force was excessive to the need and that the force was objectively unreasonable, the second and third

---

[44] *See, e.g., Grigsby v. Lawing*, No. 5:16CV16-RWS-CMC, 2017 U.S. Dist. LEXIS 219523, at *54 (E.D. Tex. Aug. 21, 2017) (finding it was reasonable for an officer to see "a shiny metal object" in the suspect's hand and believe it was a knife, when it was actually a spoon); *Reese v. Anderson*, 926 F.2d 494, 501 (5th Cir. 1991) (police did not use excessive force where suspect repeatedly refused to keep hands raised and appeared to be reaching for an object, despite the "fact that [suspect] was actually unarmed"); *Young v. City of Killeen*, 775 F.2d 1349, 1353 (5th Cir. 1985) (use of deadly force permitted when suspect refused instructions to exit the vehicle and reached down to the floorboard despite being unarmed).

[45] There is no consensus, in this Circuit or others, about the type and size of knife that a reasonable officer could perceive as posing a threat of serious harm. Se*e Shepherd v. City of Shreveport*, No. 14-2623, 2018 U.S. Dist. LEXIS 50976, at *23 (W.D. La. Mar. 27, 2018) (use of deadly force objectively reasonable when suspect was armed with a knife with a four inch blade, in close proximity to the shooting officer, and continuing to move toward the officer); *Gaddis v. Redford Twp.*, 364 F.3d 763, 776 (6th Cir. 2004) (finding that officers could have reasonably believed a mentally-ill suspect who may have had a three-inch knife posed a threat of serious physical harm); *Johnson v. Combs*, No. 4:04CV-019-M, 2005 U.S. Dist. LEXIS 21634, at *15 (W.D. Ky. Sep. 27, 2005) (finding deadly force objectively reasonable against a mentally-ill and suicidal man who "lunged" at officers with a four-inch knife and came within six to eight feet of them); *but see Samples v. City of Atlanta*, 846 F.2d 1328, 1332 (11th Cir. 1988) (noting, in reversing grant of summary judgment for police officer in excessive force case, that a "small" knife with three-inch blade was among the "physical evidence from which a fact finder could infer that . . . [the officer] was excessively violent.").

[46] Dkt. No. 4 p. 4, ¶ 9.

prongs. After considering the perspective of the Officers on the scene, the Court concludes a reasonable officer could determine that Decedent posed a serious threat of harm and thus was justified in utilizing deadly force.

First, from the perspective of Officers Flores and Rodriguez, Decedent was armed and potentially dangerous. The Officers confronted Decedent in the early hours of the morning, advancing on them, armed with two knives. Although butter knives are not objectively dangerous objects, Plaintiff does not allege Flores and Rodriguez knew the objects were butter knives. Most butter knives are approximately between six and eight inches long; many courts have deemed smaller knives than this posed a "serious threat of harm."[47] Without being informed that the objects were butter knives, a reasonable officer could conclude these knives posed a threat of serious harm. Thus, from the perspective of Flores and Rodriguez, it was not unreasonable for them to determine that they were dealing with a man armed with potentially deadly weapons.[48]

Decedent's behavior further supports finding that Flores and Rodriguez were objectively reasonable in their use of force. Plaintiff alleges Decedent was "acting strange and unstable" and "rowdy," and "utterly spooked" the Officers.[49] Plaintiff's complaint indicates that Decedent continually advanced, beginning in the house, then "down the front porch" until the Officers opened fire when Decedent was on the "sidewalk."[50] Finally, Plaintiff concedes Decedent was "not responding to [the Officers'] commands."[51] Plaintiff does not allege Flores and Rodriguez were informed that Defendant had special needs and could not move quickly. Thus, again from

---

[47] *See Gaddis*, 364 F.3d at 776 (finding a three-inch knife posed a threat of serious physical harm); *Johnson*, 2005 U.S. Dist. LEXIS 21634, at *15 (finding deadly force objectively reasonable when suspect had a four-inch knife).
[48] *See Grigsby*, 2017 U.S. Dist. LEXIS 219523, at *54 (determining that officers were reasonable to use force when they believed that a spoon was a dangerous weapon).
[49] Dkt. No. 4 p. 4, ¶ 9.
[50] *Id.*
[51] *Id.*

the Officers' perspective, they were facing an erratic and unresponsive individual who was armed and advancing towards them.[52]

Further, although the complaint does not state how close Decedent was to Flores and Rodriguez, it gives rise to the inference that Decedent was in close proximity to the Officers. Plaintiff alleges the Officers opened the door and were "spooked" by Decedent who continued to advance. Plaintiff alleges the Officers "started running backward down the front porch," and did not shoot until Decedent was on the sidewalk.[53] Thus, while the exact distance between Decedent and Flores and Rodriguez is uncertain, the allegations in the complaint indicate it was in fairly close proximity.[54]

On this basis, the Court concludes, given the totality of the circumstances, it was not objectively unreasonable for Flores and Rodriguez to decide Decedent "posed a serious threat of harm," and thus their use of deadly force is justified. Contrary to Plaintiff's argument, the Officers need not have made the best choice, but only an objectively reasonable decision from their perspective.[55] From the Officers' perspective they were confronting an armed and unstable man who was in close proximity, not responding to their commands, and continuing to move towards them. This is sufficient to find the use of deadly force was objectively reasonable. Accordingly, Plaintiff fails to state claim for an excessive force violation against Flores and Rodriguez.

---

[52] *See Ramirez*, 542 F.3d at 131 (5th Cir. 2008) (no violation when the totality of a suspect's conduct could reasonably be interpreted as "defiant and threatening"); *Clayton*, 547 F. App'x at 653 (qualified immunity appropriate when "suspect with dangerous and violent propensities" "continued toward the Deputy, ignoring his commands"); *Manis*, 585 F.3d at 844 (no constitutional violation when victim ignored repeated police commands).
[53] Dkt. No. 4 p. 4, ¶ 9.
[54] *See, e.g., Rhodes*, 945 F.2d at 120 (6th Cir. 1991), cert. denied, 502 U.S. 1032 (1992) (finding four to six feet of the officers to be close enough to weigh in favor of deadly force being justified); *Wood v. City of Lakeland*, 203 F.3d 1288, 1292-93 (11th Cir. 2000) (same but six to eight feet).
[55] The analysis is confined to whether the officer reasonably believed he was "in danger *at the moment of the threat.*" *Bazan v. Hidalgo Cty.*, 246 F.3d 481, 493 (5th Cir. 2001) (emphasis in original).

Additionally, even if Plaintiff had stated a claim, the Court finds Flores and Rodriguez would be entitled to qualified immunity. To overcome qualified immunity, a plaintiff must show two things: (1) that the allegations make out a constitutional violation, and (2) that the violation was clearly established at the time of the conduct.[56] Here, although the Court has already determined that Plaintiff's allegations are insufficient, the Court nonetheless considers whether the alleged violations of Decedent's rights were clearly established at the time the event occurred.

A right is clearly established if a reasonable official would understand that what he is doing violates that right.[57] An official's actions are held to be reasonable unless "all reasonable officials" in the same circumstances would have known that the conduct violated the plaintiff's asserted rights.[58] The focus of the analysis is on whether an official had "fair notice" that the conduct was unreasonable and is judged against "the backdrop of the law at the time of the conduct."[59]

To find an official had fair notice "there must be a controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity."[60] The Fifth Circuit has noted that, "[e]xcessive force incidents are highly fact-specific and without cases squarely on point, officers receive the protection of qualified immunity."[61] However, "this does not mean that 'a case directly on point' is required."[62] Rather, "existing precedent must have placed the statutory or constitutional question 'beyond debate.'"[63]

---

[56] *Carroll v. Ellington*, 800 F.3d 154, 169 (5th Cir. 2015).

[57] *Anderson v. Creighton*, 483 U.S. 635, 640 (U.S. 1987).

[58] *Thompson v. Upshur County*, 245 F.3d 447, 457 (5th Cir. 2001).

[59] *Brosseau v. Haugen*, 543 U.S. 194, 198 (U.S. 2004).

[60] *Morgan v. Swanson*, 659 F.3d 359, 371-72 (5th Cir. 2011) (en banc) (internal quotation marks and citation omitted).

[61] *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 383 n.1 (5th Cir. 2009); *see also Anderson v. Creighton*, 483 U.S. 635, 638 (1987) ("[Q]ualified immunity protects all but the plainly incompetent or those who knowingly violate the law." (internal quotation omitted)).

A review of Fifth Circuit cases does not provide any case directly on point, and existing precedent does not place the statutory or constitutional question "beyond debate." As noted above, numerous courts have found in similar circumstances that use of deadly force was objectively reasonable from the perspective of the officer at the scene. Given the lack of controlling precedent, and the fact that excessive force claims must be "particularized" to the facts of the case,[64] the Court concludes that Flores and Rodriguez would not have been on notice that using deadly force on an unresponsive man advancing on them armed with a knife in each hand was objectively unreasonable. Thus, even assuming Plaintiff were to state a claim, Defendants Flores and Rodriguez would be entitled to qualified immunity.

The issue of qualified immunity, an extremely fact specific inquiry, has been raised here on a motion to dismiss, which is an analysis based on the face of the pleadings. For this reason, when the defendant asserts qualified immunity on a motion to dismiss, the trial court can, in its discretion, order the plaintiff to submit a reply refuting the immunity claim "with factual detail and particularity."[65]

The Court declines to exercise its discretion in this instance. Plaintiff has responded to Defendants' assertion of immunity with factual arguments that include particular details and arguments.[66] In addition, the Court has conducted its own review of applicable cases and found the facts as asserted by Plaintiff would not support finding any violation was clearly established under existing law. Thus, requiring Plaintiff to file an additional answer would serve no purpose, and the Court declines to do so.

---

[62] *Id.* at 372 (quoting *Ashcroft v. al-Kidd,* 563 U.S. 731, 741 (U.S. 2011)).

[63] *Id.*

[64] *See White v. Pauly,* 137 S. Ct. 548, 552 (2017).

[65] *Johnson v. Halstead,* 911 F.3d 267, 273 (5th Cir. 2018); *see also Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995) (en banc).

[66] *See* Dkt. No. 12.

Based on the foregoing, the Court concludes Plaintiff has failed to state cognizable excessive force claims against Flores and Rodriguez. The Court recognizes that the circumstances of this shooting are undeniably tragic. Decedent was clearly mentally and emotionally disturbed and Officers Flores and Rodriguez were called to protect Decedent and the community. Instead, Decedent's life ended. While the Court acknowledges this tragedy, determining that Flores and Rodriguez were justified in their actions is the necessary legal conclusion in this case.[67]

Accordingly, Plaintiff's excessive force claims against Flores and Rodriguez in their individual capacities are **DISMISSED WITH PREJUDICE**.

### iii.  Failure to Train Claim Against the PPD

Plaintiff brings a claim against the PPD on the basis that it was deliberately indifferent in its training practices.[68] Cities may not be sued under § 1983 for an injury inflicted solely by its employees or agents, however, cities may be liable if their policies or customs *caused* the underlying constitutional violation.[69] Municipal liability requires deliberate action attributable to the municipality that is the direct cause of the alleged constitutional violation.[70]

Plaintiff's claim must be dismissed. Plaintiff's claim requires the violation of an underlying constitutional right, which the Court has concluded is lacking here.[71]

---

[67] Other courts, when confronted with similar tragic outcomes involving interactions between law enforcement and mentally and emotionally disturbed individuals, have urged law enforcement to "to ensure that more avoidable deaths do not occur at the hands of those called to 'protect and serve.'" *Harris v. New Orleans Police Dep't*, No. 11-752, 2013 U.S. Dist. LEXIS 45536, at *32 (E.D. La. Mar. 29, 2013). Similarly, while finding the majority to be correct in its legal judgments, Judge DeMoss of the Fifth Circuit Court of Appeals has repeatedly urged a change in law enforcement procedures to prevent the deaths of emotionally disturbed people in circumstances that reflect those seen here. *See Rockwell*, 664 F.3d at 996-97 (DeMoss, J., concurring); *Elizondo*, 671 F.3d at 511 (DeMoss, J., concurring).

[68] *See* Dkt. No. 4 p. 6.

[69] *Monell v. Dep't of Social Services*, 436 U.S. 658, 690-91, 694 (U.S. 1978).

[70] *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 391-92 (U.S. 1989).

[71] *See id.* at 386-90; *see also Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007) ("[T]here can be no liability under *Monell* for failure to train when there is no violation of the plaintiff's constitutional rights.").

Even assuming, *arguendo,* that Plaintiff had stated a constitutional violation, Plaintiff still fails to state a claim against the PPD. To prevail against the PPD, Plaintiff must demonstrate: (1) the PPD had a policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is the policy or custom.[72] A municipality's failure to train police officers can be a custom or policy that gives rise to § 1983 liability.[73] To prevail on a "failure to train theory" a plaintiff must demonstrate: (1) that the municipality's training procedures were inadequate, (2) that the municipality was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the violations in question.[74]

"Deliberate indifference is a stringent standard, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."[75] "To demonstrate deliberate indifference, a plaintiff must show that 'in light of the duties assigned to specific officers or employees, [the] need for more or different training [or supervision] is obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.'"[76] "The failure to train [or supervise] must reflect a 'deliberate' or 'conscious' choice by a municipality."[77]

To establish deliberate indifference, a plaintiff must usually show a pattern of similar violations.[78] "In order for liability to attach based on an inadequate training claim, a plaintiff

---

[72] *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002).
[73] *World Wide Street Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 756 (5th Cir. 2009) (citations omitted).
[74] *Id.*
[75] *Valle v. City of Houston*, 613 F.3d 536, 547 (5th Cir. 2010).
[76] *World Wide Street Preachers*, 591 F.3d at 756 (quoting *City of Canton*, 489 U.S. at 387).
[77] *Id.* (quoting *City of Canton*, 489 U.S. at 389) (internal quotation marks omitted).
[78] *See Connick v. Thompson*, 563 U.S. 51, 62 (U.S. 2011).

must allege with specificity how a particular training program is defective."[79] The Fifth Circuit has "rejected attempts by plaintiffs to present evidence of isolated violations and ascribe those violations to a failure to train."[80]

However, a plaintiff may allege deliberate indifference based on a single incident, but that circumstance is rare and "a plaintiff must prove that the highly predictable consequence of a failure to train would result in the specific injury suffered, and that the failure to train represented the moving force behind the constitutional violation."[81] Showing "nothing more than [] deficient training on the use of force" is insufficient to state a claim under the single incident exception.[82] Further "general knowledge of the dangers inherent if poor training is given" does not amount to the specific showing necessary to indicate deliberate indifference based on a single incident.[83]

Plaintiff fails to state a claim for failure to train. Here, Plaintiff argues the PPD "failed to adequately train its officer in the use of deadly force and how to deal with individuals with special needs."[84] As support Plaintiff alleges the PPD violated Texas Occupations Codes 1701.253 by "not making sure officers took the necessary classes in dealing with individuals with mental illness and how to de-escalate situations . . . ."[85] Plaintiff does not specify which part of the statute he is referencing, however the Court infers Plaintiff is referring to the section which requires state-mandated training classes on crisis intervention techniques for interactions with people with mental impairments.[86]

---

[79] *Zarnow v. City of Wichita Falls Tex.*, 614 F.3d 161, 170 (5th Cir. 2010) (internal quotation marks omitted) (quoting *Roberts v. City of Shreveport,* 397 F.3d 287, 293 (5th Cir. 2005)).
[80] *Id.*
[81] *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010).
[82] *Hobart v. Estrada*, 582 F. App'x 348, 358 (5th Cir. 2014).
[83] *Id.*
[84] Dkt. No. 4 p. 6, ¶ 18.
[85] *Id.*
[86] *See* Tex. Occ. Code Ann. § 1701.253(j).

The Court finds these allegations, though lacking in specificity, are sufficient to demonstrate an inadequate training policy, the first prong of a failure to train claim. The Fifth Circuit has found that providing "no training (and no supervision)" constitute inadequate training policies.[87] Taking Plaintiff's allegations as true, as the Court must at this stage, and assuming that the PPD is not training its officers on how to deal with individuals with special needs, the Court finds this would constitute an inadequate training program, thus meeting the first prong burden.

However, the Court concludes Plaintiff fails to allege sufficient facts to satisfy the remaining two prongs: deliberate indifference and causality. In regards to deliberate indifference, Plaintiff must show a municipal actor disregarded, "a known or obvious consequence of his action."[88] First, Plaintiff makes no allegation there was a pattern of incidents by which the Court could find the PPD was deliberately indifferent in its training programs. Second, Plaintiff fails to allege that the specific occurrence of Plaintiff's injury in this single incident was so "highly predictable" as to amount to deliberate indifference.[89]

The single incident exception is "extremely narrow" and must be alleged with specificity.[90] Plaintiff makes no such showing. A merely deficient training program is not sufficient to state a claim under the single incident exception.[91] Plaintiff must state particular facts that show the PPD was aware that an injury such as Plaintiff's was "highly predictable" in the specific circumstances.[92] Plaintiff makes no arguments or allegations regarding the training program, Officers Flores and Rodriguez, or Decedent that would supporting finding that the PPD

---

[87] *Brown v. Bryan Cty.*, 219 F.3d 450, 462 (5th Cir. 2000).
[88] *Valle*, 613 F.3d at 547.
[89] *See Sanders-Burns*, 594 F.3d at 381.
[90] *Valle*, 613 F.3d at 542.
[91] *See Hobart*, 582 F. App'x at 358–359.
[92] *See Sanders-Burns*, 594 F.3d at 381.

was aware that this specific incident was highly predictable. Indeed, Plaintiff concedes that Jose Gomez had called the PPD "several times before" for assistance in dealing with Decedent and no injury occurred.[93] Thus, the Court finds Plaintiff's allegations are not sufficiently specific to give rise to a plausible inference that any training, or lack thereof, could give rise to liability based on this single incident.[94]

Similarly, Plaintiff makes no allegation as to how the failure to complete a training program outlined under Texas Occupations Code § 1701.253 caused this specific constitutional violation and, thereby failing the third prong. Plaintiff provides no causal allegations between the alleged failure of the PPD to require officers to complete the training and this incident.

Thus, Plaintiff's conclusory allegation that the PPD's training programs were inadequate are insufficient, even at the pleading stage, to state a claim for municipal liability for an excessive force violation. Accordingly, Plaintiff's claim against the PPD for failure to train is **DISMISSED WITH PREJUDICE**.

### iv. *State law claims*

Defendants request the dismissal of Plaintiff's state law claims.[95] Plaintiff states responds that he is not seeking to assert any state law claims.[96]

Although Plaintiff's complaint does not directly assert any cause of action based in state law, the complaint references Texas Occupations Code § 1701.253, a Texas statute; bystander injury, which could be construed as the basis of a Texas state law claim sounding in tort; and joint and several liability, which is premised on a theory of general negligence.[97]

---

[93] Dkt. No. 4 p. 3, ¶ 9.
[94] *See City of Canton v. Harris*, 489 U.S. 378, 390 n.10 (U.S. 1989) (hypothesizing that a city giving officers firearms and requiring them to arrest fleeing subjects without training could create single incident liability).
[95] Dkt. No. 8 pp. 6–7.
[96] Dkt. No. 12 p. 5, ¶ 7.
[97] *See* Dkt. No. 4.

Thus, despite Plaintiff's assertion that he is not stating any state law claims, the Court briefly addresses each of these claims and concludes, to the extent that Plaintiff may be asserting any state law claims, Plaintiff fails. The Court will consider each in turn.

### a. Texas Occupations Code § 1701.253

Defendants argue Plaintiff's claim under Texas Occupations Code § 1701.253 do not state a claim. However, Plaintiff's complaint did not bring any such claim, as Plaintiff acknowledges.[98] However, to the extent that Plaintiff's complaint may be read to be alleging a claim under this statute, this statute does not create a private cause of action.[99]

Accordingly, to the extent Plaintiff is stating a claim under Texas Occupations Code § 1701.253, this claim is **DISMISSED WITH PREJUDICE**.

### b. Negligence

It is likewise unclear if Plaintiff intends to bring a negligence claim. Plaintiff includes in his complaint that "Defendants were jointly and severally liable for the gross negligence, which was the proximate cause of Plaintiff's injuries."[100] The Court concludes, to the extent this statement may be asserting a cause of action based on Texas common law negligence, Defendants are entitled to sovereign immunity.

A Texas municipality may not be held liable for Texas common law claims unless the Texas legislature has waived governmental immunity.[101] Immunity is only waived for claims brought under the Texas Tort Claims Act ("TTCA").[102] Under the TTCA, any claims against

---

[98] *See* Dkt No. 12 p. 5, ¶ 7; *see also* Dkt. No. 4.
[99] *Lundgren v. State*, No. 02-11-00486-CR, 2012 Tex. App. LEXIS 7339, at *7 (App. Aug. 30, 2012).
[100] *Id.* at p. 9, ¶ 32.
[101] *City of Watauga v. Gordon*, 434 S.W.3d 586, 589 (2014).
[102] *Id.*; *see* Tex. Civ. Prac. & Rem. Code §§ 101.001, et seq.

individual employees are barred.[103] Further, as to any claims against the PPD, the TTCA prohibits claims for intentional torts.[104] A claim properly stated as an intentional tort may not be restated as a claim for negligence.[105] Claims of excessive force in the context of police action "arise out of a battery rather than negligence, whether the excessive force was intended or not."[106]

Here, to the extent Plaintiff's mention of negligence is an attempt to assert a cause of action, it fails. Any claim against Defendants Flores and Rodriguez are not permitted under the TTCA. Additionally, Plaintiff's allegations against the PPD would only support an intentional tort, and thus is barred by sovereign immunity. Accordingly, to the extent Plaintiff seeks to assert a claim sounding in negligence, this claim is **DISMISSED WITH PREJUDICE**.

### c. Bystander Injury

Plaintiff also alleges "bystander injury" and asserts Jose Gomez "suffered direct personal injury in the form of mental anguish and severe emotional distress."[107] Like Plaintiff's other state law claims, it is unclear if this statement is intended to state a cause of action. However, to the extent that this is Plaintiff's intent, such a claim fails.

Texas law generally permits a bystander to recover mental anguish damages after witnessing a close relative suffer a traumatic injury only if the cause of that distress was a defendant's negligent action.[108] However, "[b]efore a bystander may recover, he or she must establish that the defendant has negligently inflicted serious or fatal injuries on the primary

---

[103] *See* Tex. Civ. Prac. & Rem. Code §§ 101.106 (e) ("If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit.").
[104] *Id.* § 101.057.
[105] *Lopez-Rodriguez v. City of Levelland, Texas*, 100 F. App'x 272, 275 (5th Cir. 2004) (per curiam).
[106] *Gordon*, 434 S.W.3d at 593.
[107] Dkt. No. 4 p. 7, ¶¶ 20–21.
[108] *See Edinburg Hosp. Auth. v. Trevino*, 941 S.W.2d 76, 80 (Tex. 1997).

victim."[109] "Mental anguish is only an element of recoverable damages in some but not all circumstances when the defendant breaches some other duty."[110]

As explained, Plaintiff has stated no cognizable cause of action. Without a cognizable claim, Plaintiff cannot state an independent cause of action for the mental anguish of Jose Gomez witnessing the shooting of this brother. Thus, to the extent that Plaintiff is seeking to allege a claim based on "bystander injury," this claim is **DISMISSED WITH PREJUDICE**.

## IV.   HOLDING

For the foregoing reasons, Plaintiff's motion to amend the complaint[111] is **DENIED**. Additionally, Defendants' motion to dismiss[112] is **GRANTED** and all Plaintiff's claims, and his entire complaint, are **DISMISSED WITH PREJUDICE**. Pursuant to Rule 58, a final judgment will issue separately.

IT IS SO ORDERED.


DONE at McAllen, Texas, this 5th day of February, 2019.

_____
Micaela Alvarez
United States District Judge

---

[109] *Boyles v. Kerr*, 855 S.W.2d 593, 598 (Tex. 1993).
[110] *Day v. Rogers*, 260 F. App'x 692, 696 (5th Cir. 2007) (citing *Boyles v. Kerr*, 855 S.W.2d at 594–596); *see also Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005) ("[I]ntentional infliction of emotional distress is a 'gap-filler' tort never intended to supplant or duplicate existing statutory or common-law remedies.").
[111] Dkt. No. 13.
[112] Dkt. No. 8.